IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SAMMY D. PIERCE,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-17-025-JHP-KEW
                                    )
NANCY A. BERRYHILL, Acting          )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Sammy D. Pierce ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed his high school education.  Claimant has worked in the past as a self-employed chicken farmer.  Claimant alleges an inability to work beginning December 31, 2007 due to limitations caused by lumbosacral spine disorder and headaches.

### Procedural History

On April 23, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C.

3

§ 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 1, 2015, a hearing was held before Administrative Law Judge ("ALJ") B. D. Crutchfield by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. By decision dated September 9, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's requests for benefits. On January 2, 2017, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet or equal a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's credibility; and (2) failing to include all of Claimant's limitations in the RFC.

## Credibility Evaluation

In her decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease. (Tr. 14). She

4

concluded Claimant retained the RFC to perform sedentary work in that he could lift/carry up to ten pounds occasionally and five to ten pounds frequently; stand/walk for two hours in an eight hour workday with normal breaks; and sit for six hours in an eight hour workday with normal breaks. Claimant could push and/or pull ten pounds occasionally and five to ten pounds frequently. (Tr. 15).

Based upon this RFC and after consultation with a vocational expert, the ALJ found at step five that Claimant could perform the representative jobs of clerical mailer, assembler, and stuffer, all of which the ALJ found existed in sufficient numbers in the regional and national economies. (Tr. 21). As a result, the ALJ determined Claimant was not disabled from December 31, 2007 thorugh the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate his credibility as to pain. Claimant testified that his lower back "goes out about once a month." When this occurs, Claimant stated that it "paralyzes my legs and I mean, I cannot walk." Sometimes it affects his right leg and sometime his left leg. (Tr. 51). Claimant possesses a driver's license but on average twice a week because his legs will go out. He has not had any accidents as a result of his legs going out while driving. (Tr. 52).

In 2008, Claimant received income of $5,591.00 but he testified that he had picked up hay for his father and the check

was written in his name. (Tr. 53). He stated the same arrangement caused a showing of $3,896.00 in 2009 and $5,649.00 in 2011. (Tr. 54).

Claimant testified he had not been bedfast since he alleges onset in 2007. He rated his pain as five out of ten all of the time but a ten out of ten when his back goes out. (Tr. 55). He stated he takes pain pills. (Tr. 56). Claimant contends it takes two to three weeks to get over the condition when his back goes out. (Tr. 55).

When his back is completely out, Claimant cannot shower but the condition does not require someone to come in and take care of him. However, he does require help to go to the bathroom during this time. (Tr. 56).

Claimant has not undergone back surgery or had any epidural steroid injections. He has a back brace given to him in 1997 which he wears "sometimes". He does not use a cane or walker but walks grabbing onto things in the house. He lives on 200 acres belonging to his father. The acreage is operated as a hayfield. (Tr. 57). His father and brother harvest that hay but when it is sold, the income is recorded in Claimant's name because his father cannot show income under the terms of his retirement. (Tr. 58).

Claimant goes to bed at 8:00 p.m. or 9:00 p.m. and sleep for three or four hours. He is up and down most of the night. He goes

outside in the morning for a little while and lays in the recliner or couch. (Tr. 58). He states that he does not do anything. (Tr. 59).

On August 25, 2012, Claimant was evaluated by Dr. Traci L. Carney. The cervical and thoracic spine were non-tender with full range of motion. Claimant's lumbar-sacral spine was tender with limited range of motion associated with pain. Dr. Carney noted no scoliosis, increased kyphosis, or increased lordosis. Straight leg raising reflex was negative bilaterally in both sitting and supine positions. Claimant's gait was safe and stable with appropriate speed. He did not use an assistive device, had not identifiable muscle atrophy. His heel/toe walking was weak secondary to pain. Dr. Carney assessed Claimant with low back pain and possible degenerative disc disease. (Tr. 334-36).

On July 9, 2013, Dr. Ronald Schatzman evaluated Claimant's condition. He found Claimant's lumbar-sacral spine was bilaterally 2+ tender and had 2+ muscle spasms noted. Pain was noted at 4+ with diminished range of motion. Flexion was 80/90 degrees and extension was 10/25 degrees. Bilateral side bending was 25/25 degrees. Straight leg raising reflex was positive bilaterally in both sitting and supine positions, with it being worse on the right side. (Tr. 343). Claimant's gait was safe and stable with appropriate speed, he did not use an assistive device, had not

identifiable muscle atrophy, showed weak heel/toe walking bilaterally, and his tandem walking was within normal limits. (Tr. 344). Dr. Schatzman diagnosed Claimant with back pain, headaches by history, and chest pain by history. Id.

On October 15, 2013, Claimant went to the emergency room at Sparks Regional Medical Center complaining of chest pain. (Tr. 393). On November 7, 2013, Claimant underwent an MRI of the lumbar spine. The scan revealed degenerative disc disease changes at L4-5 and L5-S1 level with small central disc protrusion at L5-S1 level. No compression fractures and no spondylolisthesis were noted. The conus medullaris region was within normal limits. Otherwise, the MRI was normal of the lumbar spine. (Tr. 438).

On April 20, 2015, Claimant was attended by Ms. Angela Yates, a nurse practitioner. Claimant reported low back and left leg pain after he had bent over to put a battery charger on a lawn mower four days before the visit. (Tr. 454). On examination, Ms. Yates exhibited tenderness on palpation of the lumbosacral spine. Straight leg raising of the right leg was positive - negative with sitting but pain with supine and raising. Claimant's lumbosacral spine exhibited normal appearance. Palpation of the lumbosacral spine revealed no abnormalities. Active flexion and extension was normal. Straight leg raising of the left leg was negative when sitting and legs at 45 degrees but pain with lying and raising

legs.  Crossed straight leg raising was negative bilaterally and a modified straight leg test was negative bilaterally.  Claimant's gait and stance were normal.  Ms. Yates prescribed anti-inflammatory and pain medication.  She also administered an injection.  (Tr. 456).  She also recommended gentle stretching and exercise.  (Tr. 457).  On April 27, 2015, Claimant reported his pain was 30-40% better and it was no longer radiating down his leg. (Tr. 450)

On July 27, 2015, x-rays of Claimant's spine revealed minimal diffuse spondylosis, mild degenerative disc disease at T12-L1 and L1-L2.  Vertebral body heights and alignment were maintained with no fractures and mild atherosclerosis.  (Tr. 469).  On August 17, 2015, an MRI indicated multilevel facet arthrosis, shallow disc bulges at L4-5 with resultant mild foraminal narrowing and tiny central disc osteophyte complex at L5-S1, but without spinal stenosis.  (Tr. 475).

RFC assessments were offered by Dr. Charles Clayton and Dr. Karl K. Boatman.  (Tr. 77, 91).  Both found Claimant to be credible and provided an RFC consistent with sedentary work.  Id.

The ALJ found Claimant's "allegations of pain, other symptoms, and functional limitations" were not "entirely credible."  She concluded Claimant was not so limited as to render him unable to engage in substantial gainful activity.  The ALJ supported this

9

conclusion with findings of a lack of treatment, opinions offered by the reviewing consultative physicians which supported an RFC for sedentary work, testimony of unsupported extreme limitations, and a lack of medical evidence to support his testimony of limitation and pain which allegedly did not permit him to do anything. (Tr. 19-20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ's credibility findings are well-supported by the medical evidence in the record. Claimant attempts to undermine the ALJ's conclusions by citing to the reviewing physicians' notation that Claimant was "fully credible." Nothing in these brief notations bound the ALJ to their conclusions. More importantly, these physicians did not have access to Claimant's testimony at the administrative hearing since it had not yet occurred. No error is found in the ALJ's credibility findings.

Claimant's second issue that the ALJ failed to include all of his limitations in the RFC such as a need to recline and that it takes a week or two to recover from when his "back goes out" rely almost exclusively upon Claimant's subjective assertions. Since the ALJ found a lack of medical support for these statements, she was not obligated to include them in the RFC. The credibility finding precluded their inclusion.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security

Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE